

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,244

### EX PARTE BENJAMINE JOHN SPENCER, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### IN CAUSE NO. W87-96524-T(A) FROM THE
### 283RD JUDICIAL DISTRICT COURT OF DALLAS COUNTY

**PRICE, J., filed a concurring opinion in which HERVEY and COCHRAN, JJ., joined.**

### CONCURRING OPINION

I join the Court's opinion. This case has drawn a great deal of curious attention. I write separately to emphasize why it is appropriate for this Court to exercise its duty and prerogative, as the ultimate factfinder in post-conviction habeas corpus matters,[1] to take

---

[1] In the context of post-conviction habeas corpus, the convicting court is the "original" factfinder, and we ordinarily pay great deference to that court's findings of fact and conclusions of law when supported by the record. But that deference is not boundless, and we do not simply rubber-stamp the convicting court's recommendations. This Court is the "ultimate" factfinder, with the prerogative to reject the convicting court's recommendations on those rare occasions when we deem it appropriate, even when they are supported by the record, if we think another disposition is manifestly *better* supported by the record. *Ex parte Reed*, 271 S.W.3d 698, 727-28 & n.22 (Tex. Crim. App. 2008).

whatever time is necessary on an extensive record to carefully consider and resolve a claim such as this.[2]  It is especially fitting that we should not rush to judgment in view of the opposition of the district attorney's office, an office that has a current reputation for not reflexively opposing post-conviction claims of actual innocence—indeed, for actively facilitating the investigation of such claims as are at least facially plausible.[3]

Habeas corpus is an extraordinary remedy.  Any grant of post-conviction habeas corpus relief flies in the face of the State's compelling interest in the finality of its hard-won conviction. Claims of actual innocence threaten the State's finality interest even more than most because, though the remedy is a new trial, it is rare that the State can successfully retry such a case if habeas relief is granted.  Texas is one of the few jurisdictions so far to recognize actual innocence as a cognizable due process claim in post-conviction habeas corpus proceedings.[4]  Believing that the societal interest in accurate results in criminal trials should invariably trump the State's otherwise legitimate interest in the finality of its convictions, I have always concluded that we are right to recognize actual innocence claims

---

[2] The case was actually submitted to this Court and has been pending written decision only since April 14, 2010.

[3] *See*, *e.g.,* Jennifer S. Forsyth & Leslie Eaton, *The Exonerator: The Dallas D.A. is Reviewing Old Cases, Freeing Prisoners—and Riling His Peers*, WALL ST. J., Nov. 15, 2008.

[4] *See* Glenn A Garber & Angharad Vaughan, *Actual-Innocence Policy, Non-DNA Innocence Claims*, 239 N. Y. L. J.  65, Apr. 4, 2008 ("The high courts of five states [including Texas] have adopted some form of freestanding actual innocence" claim).

in post-conviction habeas corpus proceedings. But we are also right, in deference to the State's otherwise legitimate interest in finality of its convictions, to insist that establishing a bare claim of actual innocence should be "a Herculean task."[5]

Accordingly, when we first recognized bare actual innocence as a cognizable, stand-alone claim in post-conviction habeas corpus proceedings, we deliberately designed the standard to be exceedingly rigorous. In *Ex parte Elizondo*, we held that, to succeed in such a claim, an applicant must produce new evidence to demonstrate that he is "unquestionably innocent"; that is to say, the reviewing court must be able to conclude, after factoring the new, exculpatory evidence in with the inculpatory evidence introduced at trial, that the applicant has shown "by clear and convincing evidence that no reasonable juror would have convicted him in light of the new evidence."[6] In *Ex parte Franklin*, we elaborated that a claim of actual innocence requires applicants to produce evidence "that proves [their] innocence and not merely raises doubt about their guilt[.]"[7] Only after the applicant has produced such "affirmative evidence of [his] innocence" need the determination then be made whether, by clear and convincing evidence, weighing both the new and the old, no

---

[5] *Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006).

[6] 947 S.W.2d 202, 209 (Tex. Crim. App. 1996).

[7] 72 S.W.3d 671, 677 (Tex. Crim. App. 2002).

rational jury would have convicted him.[8]

We typically see two types of evidence of actual innocence that might, under the right circumstances, qualify as "affirmative evidence of innocence." First, if an offender leaves biological material such as blood or semen behind, and the circumstances show that he acted alone in perpetrating the offense, post-conviction DNA testing may constitute affirmative evidence of an applicant's innocence if it reveals that the biological material was not his. Second, if the victim of an offense recants his trial testimony that an applicant assaulted him, there is no other evidence that an assault even occurred (or at least that the applicant was the perpetrator), and the recantation is deemed more credible under the circumstances than the trial testimony, then the recantation may count as affirmative evidence of innocence. (Indeed, under this second scenario, it may become evident that no offense even occurred!) The Court correctly concludes today that, in the instant case, there is no comparable "affirmative" evidence of innocence; there is only evidence that could serve, however convincingly, to cast doubt upon the credibility of the State's evidence of the applicant's guilt. Such a threshold showing does not serve to outweigh the State's interest in the finality

---

[8]

  *Id*. at 678;  *see also Ex parte Brown*, *supra*, at 546 ("the applicant must make a claim that, if true, establishes affirmative evidence of his innocence.  Then, at the hearing, the trial judge assesses the witnesses' credibility, examines the 'newly discovered evidence,' and determines whether that 'new' evidence, when balanced against the 'old' inculpatory evidence, unquestionably establishes the applicant's innocence.");  *Ex parte Thompson*, 153 S.W.3d 416, 427 (Tex. Crim. App. 2005) (Cochran, J., concurring) (in assessing bare innocence claim, convicting court must determine whether the applicant's proffer of new evidence "by itself unquestionably establishes [his] innocence" before proceeding to inquire whether, balancing the new evidence with the old, inculpatory evidence, no rational jury would convict).

of its conviction.

The applicant's actual innocence claim, as I understand it, is predicated on essentially three prongs. First, the jailhouse snitch who testified that the applicant confessed to him has since recanted.[9] Second, other informants have come forward with statements that another perpetrator admitted to an offense that has certain characteristics remarkably similar to the instant murder. And third, a forensic optometrist has now proclaimed that what the State's eyewitnesses claim to have seen on the night of the offense is beyond the realm of human visual acuity. None of this evidence (assuming it is new) satisfies the applicant's present burden to show, by clear and convincing evidence, that he did *not* commit the offense. At best, it would give a jury pause in deciding whether to credit the eyewitness testimony at trial from which it can strongly be inferred that the applicant *did* commit the offense. In my view, it neither satisfies the threshold showing of "affirmative evidence of innocence," nor does it ultimately convince me by clear and convincing evidence, were I to go on to balance the "new" evidence against the "old," that no rational jury would have opted to credit the eyewitness testimony anyway and convicted the applicant accordingly. All three of the eyewitnesses knew the applicant; they were not purporting to identify a stranger. Two of

---

[9] The convicting court concluded that "there remains no evidence of [the applicant's] guilt[,]" at least in part, because the snitch's trial testimony was "inadmissible hearsay." *See* Majority opinion, at 10. Even assuming that the applicant's confession to the snitch would not fall under the hearsay exception for statements against interest, TEX R. EVID. 803(24), or that it would even constitute hearsay at all, TEX. R. EVID. 801(e)(2)(A), the applicant did not make a hearsay objection at trial, and inadmissible-but-unobjected-to hearsay has probative value under TEX. R. EVID. 802.

them also recognized what they knew to be his distinctive car at the scene, and one saw him leave in it. I might be willing to say on the basis of the applicant's new evidence that, *by a preponderance of the evidence,* no rational jury would have convicted the applicant; and, if so, I would be willing to reach *other* federal constitutional claims he might raise in a *subsequent* writ.[10] But I cannot accept the convicting court's recommendation that we grant the applicant relief on his freestanding actual innocence claim; I agree with the Court that he has not even presented "affirmative evidence of innocence," much less satisfied the admittedly—but appropriately—"Herculean" burden to demonstrate *by clear and convincing evidence* that no rational jury would have convicted him in light of his new evidence.

We filed and set this case for submission because the issue of actual innocence is at least sufficiently close that the convicting court recommended that relief be granted. Upon careful and mature consideration (which inevitably takes time), the Court has properly rejected that recommendation as inconsistent with the applicable legal standard. With these added remarks, I join the Court's opinion.

FILED:     April 20, 2011
PUBLISH

---

[10] *See* TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(2), essentially codifying *Schlup v. Delo*, 513 U.S. 298 (1995), for purposes of our own abuse-of-the-writ doctrine with respect to subsequent state post-conviction writs of habeas corpus in non-capital felony cases.